IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SHANE HECTOR,　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　　　)　　　Civil No. 1:19-cv-1481
　　　　　　　　　　　　　　　　　　　　　)
CHAD F. WOLF, Acting Secretary,　　　　　)
U.S Dept. of Homeland Security,　　　　　　)
　　　　　　Defendant.　　　　　　　　　　)

## MEMORANDUM OPINION

Plaintiff Shane Hector, a Black and African American former Transportation Security

Officer ("TSO") at Dulles Airport, filed, by counsel, his First Amended Complaint ("FAC")

against Defendant Chad Wolf, the Acting Secretary of the United States Department of

Homeland Security, which includes the Transportation Security Administration ("TSA"),

alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title

VII"). Defendant now seeks to dismiss the entire FAC with prejudice for failure to state a claim.

Plaintiff opposes defendant's motion. The motion has now been fully briefed and the parties

waived oral argument. The matter is thus ripe for disposition.

### I.

The following facts are derived from the allegations in the FAC, which are taken as true

solely for the purpose of resolving the motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265,

283 (1986).

- Plaintiff, an Black and African American man, was hired as a TSO at Dulles Airport in 2012.

- In July 2013, plaintiff discussed the acquittal of George Zimmerman in the death of Trayvon Martin under Florida's "stand your ground" law with a co-worker. Plaintiff asserted that the acquittal involved serious questions of race in America.

1

- A white co-worker, Co-Worker A, overheard the conversation and insisted that the case was not about race, but the rule of law.  Plaintiff disagreed.  Co-worker-A became agitated and stated that he had a right to stand his ground against plaintiff and "shoot him."  Plaintiff then walked away.

- Plaintiff raised the incident with Transportation Security Manager ("TSM") Art Hayes, a white man.  Plaintiff does not believe that Co-Worker A was disciplined in any way for the incident.

- Co-Worker A was later promoted to a supervisory role, which made plaintiff suffer fear and anxiety.

- In February 2014, Co-Worker B, a white male, told plaintiff that "white people have to teach African-Americans to do everything in this country."

- Co-Worker B also posted a photo of plaintiff online, with the words "F**k the Police."[1]  Plaintiff made no such statement.

- Plaintiff reported Co-Worker B's conduct to Hayes, but to plaintiff's knowledge Hayes did nothing to address Co-Worker B's conduct.

- In July 2015, Hayes told plaintiff, "you are not leadership material."

- Plaintiff understood Hayes' comments to be a reference to plaintiff being a Black, African American man who engaged in protected work-place activities.

- Also, in July 2015, plaintiff had a conversation with Deputy Assistant Federal Security Director – Screening Lester Williams regarding Co-Workers A and B, plaintiff's belief that Hayes had failed to remedy that conduct, and plaintiff's belief that Hayes had retaliated against plaintiff by stating that plaintiff was not leadership material.

- Plaintiff told Williams that he intended to file a discrimination complaint against Hayes.  Williams warned plaintiff against that course of action, told plaintiff that plaintiff should not file a discrimination complaint against Hayes, and told plaintiff that such a complaint would be perceived as "whining."

- In September 2015, while plaintiff was on bereavement leave, Co-Worker C, whose race is not identified, told other co-workers that Co-Worker C would like to "hang" plaintiff "by a noose" and drag plaintiff from Co-Worker C's car.

- Hayes learned of Co-Worker C's comment and instructed other TSA employees not to discuss the comment.

- Plaintiff later learned about Co-Worker C's comments and Hayes' response.  Plaintiff complained to other, unidentified supervisors about the comments.  To plaintiff's

---

[1] "F**k the Police" is the name of a song by the 1990s rap group N.W.A.

knowledge, no action was taken against Co-Worker C.

- On April 21, 2016, Plaintiff was at a security checkpoint at Dulles Airport and was supposed to "tap out" or relieve another TSO, Julius Akin-Ajayi, who is Black and African American.

- Plaintiff had previously reported Akin-Ajayi to management for making an error and plaintiff believed that Akin-Ajayi had an axe to grind against plaintiff.

- After tapping Akin-Ajayi out, Akin-Ajayi returned to plaintiff's security area for latex gloves. Akin-Ajayi approached plaintiff from behind and bumped plaintiff, making physical contact with plaintiff.

- Plaintiff asked Akin-Ajayi what he was doing. Akin-Ajayi stated that he needed gloves. Plaintiff informed Akin-Ajayi that he could obtain gloves elsewhere. Akin-Ajayi responded "who the hell are you to tell me I can't get gloves from here?"

- Plaintiff blocked Akin-Ajayi's ability to pass and put up his right hand and gestured at Akin-Ajayi to stop. Plaintiff then turned back to monitoring passenger body scan results at the security checkpoint.

- Akin-Ajayi attempted to force his way past plaintiff and again made contact with plaintiff's body. Akin-Ajayi succeeded in forcing his way through, which pushed plaintiff to the right and knocked a stanchion out of position. Plaintiff then pushed back against Akin-Ajayi.

- Plaintiff called a supervisor and Lead TSO Brandon Westmoreland responded to the scene. After speaking to plaintiff and Akin-Ajayi, Westmoreland instructed both to return to work.

- Later that day, Hayes questioned plaintiff about the incident.

- On April 22, 2016, Akin-Ajayi filed criminal assault charges against plaintiff. The criminal complaint contains plaintiff's social security number and date of birth, which plaintiff believes reflects that Akin-Ajayi was assisted by TSA management.

- On April 25, 2016, plaintiff contacted an Agency Equal Employment Opportunity ("EEO") counselor.

- On April 26, 2016, plaintiff learned of the charges against him, turned himself in to the police, and informed TSM Tasha Woody of his arrest.

- On April 28, 2016, plaintiff was suspended indefinitely without pay.

- On July 20, 2016, the criminal charges against plaintiff were dropped.

- On July 24, 2016, TSA notified plaintiff of the conclusion of the EEO counseling process

3

and of plaintiff's right to file a formal complaint.

- On July 28, 2016, the TSA Office of Inspection ("OOI") conducted a follow-up interview with plaintiff. Plaintiff's EEO representative, Cheryl Owens, requested that she attend the interview, but was not allowed to do so. The meeting was allegedly accusatory in nature.

- The OOI investigators asked plaintiff for a written statement regarding the incident with Akin-Ajayi. Plaintiff, frustrated with the process, stated that he had already provided a written statement to management and answered questions during the interview. The OOI investigators were insistent on a separate written statement by plaintiff and plaintiff, refusing to do so, ended the meeting.

- Plaintiff told the OOI investigators that Akin-Ajayi had access to plaintiff's personal information. Later, an OOI Investigator, Tom Dolan, said that he would look into a possible breach. Plaintiff is not aware of the results of any investigation.

- On August 9, 2016, plaintiff filed a formal complaint of discrimination with the TSA's EEO office.

- On August 15, 2016, Williams conducted a pre-decisional discussion with plaintiff.

- On August 16, 2016, plaintiff provided a written response.

- On September 2, 2016, Deputy Assistant Federal Security Director – Screening Jack Irving conducted a pre-decisional discussion with plaintiff.

- On September 13, 2016, plaintiff was issued a Notice of Proposed Removal by Williams based upon charges of: (i) workplace violence; (ii) unauthorized recording; (iii) failure to cooperate in a TSA investigation; and (iv) making inappropriate comments.

- On September 19, 2016, plaintiff provided a written response.

- On September 22, 2016, Assistant Federal Security Director – Screening Eric Chin issued a Notice of Removal to plaintiff, which terminated plaintiff's employment as of September 23, 2016.

- On October 31, 2016, TSA accepted plaintiff's claims for investigation

- On November 16, 2016, plaintiff sought to amend his formal complaint.

- On November 18, 2016, TSA accepted plaintiff's amended claims for investigation.

- During TSA's investigation, Williams admitted to knowing plaintiff's race and color, but denied any knowledge of plaintiff's EEO activity and complaints of workplace discrimination. Williams also denied that plaintiff's race, color, or prior EEO activity motivated his decision to issue the Notice of Proposed Removal to plaintiff.

4

- Also, during TSA's investigation, Chin admitted to knowledge of plaintiff's race, color, and EEO activity.  Chin denied that plaintiff's race, color, or prior EEO activity motivated his decision to issue the Notice of Removal to plaintiff.

- Plaintiff alleges that he is aware of other TSA employees in the chain of command under Williams and Chin who have engaged in more serious conduct than plaintiff and who are outside of plaintiff's protected class but were treated more favorably.[2]  Akin-Ajayi, the only comparator identified, is a Black and African American man but did not engage in protected EEO activity and was not removed from his position.

- On July 7, 2017, TSA sent plaintiff a copy of the report of investigation with respect to his original and amended complaints, as well as a notice of a right to request a hearing before an EEOC administrative judge or to receive a Final Agency Decision.

- On August 14, 2017, plaintiff filed his request for a hearing before an administrative law judge.

- On July 2, 2019, plaintiff withdrew his request for a hearing and requested a Final Agency Decision.  Accordingly, the EEOC dismissed plaintiff's hearing request and remanded the matter to the TSA.

- On August 26, 2019, plaintiff received the Final Agency Decision.

- On November 21, 2019, plaintiff filed his original complaint.

## II.

The well-settled motion to dismiss standard does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Importantly, in making this determination, a district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But a district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d

---

[2] Plaintiff does not allege any details about these comparator employees, their alleged conduct, and the alleged repercussions for their conduct.

195, 198 (4th Cir. 2014).

III.

Defendant first argues that plaintiff has not alleged a plausible claim based on his race or color. Plaintiff's race and color claims have two aspects: (i) that plaintiff was terminated based on his race or color; and (ii) that plaintiff was subject to a hostile work environment based on his race or color. Defendant argues that plaintiff's claims fail with respect to both aspects. Each aspect will be addressed in turn.

A.

With respect to plaintiff's first claim, plaintiff must allege plausible facts demonstrating that he was terminated because of his race or color. *See* 42 U.S.C. § 2000e-2(a)(1); *McCleary-Evans v. Md. Dep't of Trans.*, 780 F.3d 582, 585 (4th Cir. 2015). Plaintiff's claim in this regard fails and the motion to dismiss must be granted.

Here, the FAC alleges that Williams, a Black and African American man, recommended plaintiff for termination and that Chin, whose race and color is not alleged, affirmed that recommendation. There are *no* allegations in the FAC suggesting that Williams or Chin had any race- or color-based animus. Neither Williams nor Chin made any comments related to plaintiff's race or color. [3] As the government correctly notes, the absence of any allegations in the FAC suggesting bias on behalf of the decision-makers means that plaintiff cannot push his discriminatory termination claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 547 (2007).

Plaintiff does include the vague allegation that "Mr. Williams and Mr. Chin have

---

[3] The only allegations regarding any statements by Williams are that Williams advised plaintiff not to file an EEO complaint and that filing an EEO complaint would be perceived as "whining." FAC ¶ 35. This allegation does not disclose any animus by Williams.

6

engaged in significantly more serious conduct than the alleged conduct of Mr. Hector, yet such comparator employees, who are outside of Mr. Hector's protected class(es), were treated more favorably." FAC ¶ 77.  Yet, the only example of a comparator identified in the FAC is Akin-Ajayi, who is both Black and African American.  *Id.*  Plaintiff identifies no basis from which it could plausibly be concluded that he was terminated because of his race or color.  There are no facts alleged in the FAC from which one could determine that any of the unnamed comparators – about whom no details regarding their race, color, position, or conduct are alleged – are actually similarly situated, or that race or color was "the true basis" for plaintiff's termination.  *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010).  Indeed, as the Fourth Circuit has recognized, where "[o]nly speculation can fill the gaps in [a] complaint," dismissal is appropriate.  *McCleary-Evans*, 780 F.3d at 586.  As another judge in this district recognized, to survive a motion to dismiss, a "[p]laintiff is required to do more than make a general accusation that he 'was treated differently as a result of his race'" and must, at a minimum, "identify the similarly situated employee and 'establish a plausible basis for believing the employee was actually similarly situated.'"  *Robinson v. Loudoun Cnty. Pub. Sch.*, No. 16-cv-1604, 2017 WL 3599639, at *4 (E.D. Va. Aug. 18, 2017) (internal citations omitted).  Thus, this allegation also fails to push plaintiff's claim across the line of plausibility.

Seeking to avoid this result, plaintiff, by counsel, argues that he "plausibly alleges that Mr. Williams acted with discriminatory and retaliatory animus against Mr. Hector, since Mr. Hector had the audacity, as a Black African-American, to . . . formally charge workplace harassment."  Opp'n at 8 (Dkt. 26).  Under this line of argument, plaintiff asserts that he was terminated because of his protected activity and that he has identified sufficient comparators because Akin-Ajayi, who is Black and African American, was similarly situated but had not filed

7

an EEO claim and was not fired. *Id*. at 8-9, 10 (discussing Akin-Ajayi "the similarly situated comparator who did not engage in EEO action"). Yet, this argument does not support a discrimination claim, but goes to whether plaintiff has stated a *retaliation* claim. *See Beckwith v. Cortegra Grp.*, No. 08-cv-168, 2008 WL 4891118, at *6 (M.D.N.C. Nov. 12, 2008) (noting that, where plaintiff alleged that he was discharged after complaining about a racial remark, the "facts d[id] not support a conclusion that Plaintiff was terminated *because of* his *race*" (emphasis original)); *Triplett v. N.C. Dep't of Pub. Safety*, No. 15-cv-75, 2017 WL 1017127, at *2 (W.D.N.C. Mar. 15, 2017) (noting that "retaliation is a separate theory of liability under Title VII that has different elements than claims for [] discrimination"). Thus, the allegations regarding Akin-Ajayi and Williams' alleged hostility to EEO complaints does not save plaintiff's claim of discrimination related to his termination.

Plaintiff's second attempt to save his discriminatory discharge claim is based on his allegations of three purported racial incidents over a two-year period and by unidentified co-workers who were not involved in his discharge. *See* Opp'n at 10. This argument also fails. The incident closest in time to defendant's discharge – namely, Co-Worker C's comments regarding a noose – occurred in September 2015, more than six months before defendant's suspension without pay and approximately one year before defendant's discharge. *Comp.* FAC ¶¶ 37-40 (discussing incident in September 2015) *with* FAC ¶¶ 57, 72 (discussing suspension without pay in April 2016 and termination in September 2016). Such remarks by non-supervisory, unidentified co-workers made at least six months before the start of any disciplinary process and without any connection to that process cannot state a plausible claim for a discriminatory discharge. *See, e.g., Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 202 (4th Cir. 2018) (holding that "[u]nless the remarks upon which plaintiff relies were related to the

8

employment decision in question, they cannot be evidence of [discrimination]" and that "the discriminatory comments cannot be remote in time from the adverse action").

In sum, plaintiff alleges no facts from which one could plausibly conclude that his termination was because of his race or color. There are no allegations that the decision-makers had any animus towards him based on his race or color. There are no allegations, that are not vague or conclusory, that any similarly situated persons who were not Black or African American were treated differently from plaintiff. There are no allegations of remarks related to the discharge process or close in time to the discharge process that reveal a race- or color-based animus. Accordingly, defendant's motion to dismiss in this regard must be granted and plaintiff's claim related to his discharge must be dismissed.[4]

**B.**

Next, defendant seeks to dismiss the portion of plaintiff's discrimination claim based on a hostile work environment.[5] Defendant argues that the hostile work environment should be dismissed because: (i) plaintiff failed to timely exhaust his hostile work environment claim; and (ii) plaintiff has failed to plead a plausible claim for a hostile work environment.

**i.**

Defendant first argues that plaintiff's hostile work environment clam is untimely because plaintiff failed to bring the claim to the attention of an EEO counselor within 45 days of the action. *See* 29 C.F.R. § 1614.105(a); *Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015) ("A federal employee must begin EEO counseling 'within 45 days of the date of the matter

---

[4] Because plaintiff has already amended his complaint once and because there appear to be no allegations which plaintiff could assert that would establish race- or color-based animus by Williams or Chin, this claim must be dismissed with prejudice. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming a district court's dismissal when amendment would be futile).

[5] In his opposition brief, plaintiff clarifies that he does not base his hostile work environment claim on any discrete act, but on a progression of incidents beginning in 2013.

alleged to be discriminatory . . . ."). Plaintiff first alleges that he initiated contact with an EEO counselor on April 25, 2016. *See* FAC ¶ 12. The last obviously race-based incident alleged occurred in September 2015. *Id.* ¶¶ 37-40. Plaintiff asserts that the last race-based incident allegedly occurred on April 22, 2016 when Akin-Ajayi, a Black and African American man, filed a criminal complaint against plaintiff, allegedly with TSA management assistance. *Id.* ¶ 53.

As an initial matter, plaintiff argues that the timeliness argument is not properly before the Court on a Rule 12(b)(6) motion to dismiss and, instead, must be made pursuant to Rule 12(b)(1). Plaintiff is incorrect. As the Fourth Circuit has held, the failure to see an EEO counselor within the prescribed time limit is "not jurisdictional." *Zografov v. V.A. Medical Ctr.*, 779 F.2d 967, 969 (4th Cir. 1985). More recently, other district judges within this District have reached the same conclusion. *See Harris v. Brennan*, No. 3:18-cv-334, 2019 WL 1233848, at *2 (E.D. Va. Mar. 15, 2019) (holding that failure to timely consult with an EEO counselor was better brought as a Rule 12(b)(6) motion).[6] Plaintiff's reliance on *Dawson v. Delta Air Lines, Inc.*, 2018 WL 5316004 (E.D. Va. Oct. 26, 2019) is misplaced. In *Dawson*, the district court did not address the 45-day rule and the portion of that opinion on which plaintiff relies to argue that timeliness is jurisdictional does not address the timeliness of a claim, but rather addresses a failure to exhaust administrative remedies for a claim at all. *See Dawson*, 2018 WL 5316004 (holding that arguments that "plaintiff has failed to exhaust administrative remedies" are "evaluated under the 12(b)(1) standard"). Accordingly, defendant's timeliness arguments are properly considered pursuant to Rule 12(b)(6).

The government argues that the last incident that could possibly make up plaintiff's race-

---

[6] *See also Boudouin v. Mabus*, No. 2:10-cv-109, 2010 WL 11561528, at *4 (E.D. Va. Oct. 13, 2010) (analyzing arguments that claims were untimely pursuant to Rule 12(b)(6)); *Nicosia v. Mabus*, No. 7:16-cv-29, 2016 WL 4767537, at *1-2 (E.D.N.C. Sept. 13, 2016) (dismissing claims as untimely where motion brought pursuant to Rule 12(b)(6)).

and color-based hostile work environment is the "noose" comment from September 2015. This incident occurred more than six months before plaintiff's first contact with an EEO counselor. *Comp.* FAC ¶¶ 37-40 (noose comment in September 2015) *with id.* ¶ 12 (first contact with EEO counselor in April 2016). Thus, plaintiff's race- and color-based hostile work environment claim is untimely and must be dismissed.

Plaintiff, seeking to avoid this result, argues that the last race- and color-based incident occurred on April 22, 2016, when Akin-Ajayi – allegedly with the help of TSA management – filed a criminal complaint against plaintiff. *See* Opp'n at 12. As this Court has previously recognized, however, "incidents can only qualify as part of the same hostile work environment claim if they are adequately linked." *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 693 (E.D. Va. 2018). Here, there is no link between Akin-Ajayi's criminal complaint and any other incident. Importantly, there is no allegation that the criminal complaint was based on plaintiff's race or color. Instead, plaintiff merely alleges that he believes that Akin-Ajayi, who is Black and African American, had unlawful assistance from TSA management in filing a criminal complaint against plaintiff, in the form of the provision of plaintiff's personally identifiable information. *See* FAC ¶ 53. There is no alleged connection to plaintiff's race or color. Even assuming, *arguendo*, that there was a connection between the provision of identifying information and plaintiff's race or color, plaintiff still cannot connect that incident to any other incident as required to save his hostile work environment claim. Each incident described in the FAC, involves different conduct by unidentified persons who appear to have no connection to one another.[7] Thus, plaintiff

---

[7] *See Mustafa*, 313 F. Supp. 3d at 693 (requiring linkage in the form of "the same type of employment actions" and "the same managers"); *Comp.* FAC ¶¶ 24-27 (discussion of stand-your-ground laws in July 2013 involving unidentified Co-Worker A reported to Hayes); *id.* ¶¶ 28-30 (racist comment by unidentified Co-Worker B in February 2014 reported to Hayes); *id.* ¶¶ 37-40 (racist comment by unidentified Co-Worker C in September 2015 that Hayes instructed coworkers not to share and reported to unidentified supervisors) *with id.* ¶53 (provision of personal identifying information to Akin-Ajayi to assist with criminal complaint in April 2016 by unidentified "TSA management").

cannot tie his hostile work environment claim based on race or color to the alleged provision of personal identifying information to Akin-Ajayi. Accordingly, plaintiff's hostile work environment based on race or color is untimely pursuant to 29 C.F.R. § 1614.105(a) and must be dismissed.

**ii.**

Alternatively, even if plaintiff's hostile work environment claim is timely (which it is not), plaintiff fails to state a race- or color-based hostile work environment claim. The Supreme Court has recognized that Title VII provides a cause of action based on a hostile work environment where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The Fourth Circuit has held that to state a plausible claim for a hostile work environment, a plaintiff must allege that the conduct was: (i) unwelcome; (ii) based on a protected characteristic; (iii) sufficiently severe or pervasive to alter the conditions of his employment; and (iv) imputable to the defendant. *See EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Here, several of the incidents that plaintiff alleges in the FAC fail the second prong and third prongs of the test for a hostile work environment. The only incident which may make it beyond the third prong of this test is the incident with Co-Worker C and, with respect to that incident, plaintiff fails to allege facts which impute Co-Worker C's conduct to defendant.

In the FAC, plaintiff identifies seven incidents which he alleges make up his race- or color-based hostile work environment claim: (i) the stand-your-ground law discussion with Co-Worker A in July 2013; (ii) the "white people have to teach African-Americans to do

12

everything" comment by Co-Worker B in February 2014; (iii) Hayes' comment that plaintiff is "not leadership material" in July 2014; (iv) Williams' warning that an EEO complaint could be perceived as "whining" in July 2015; (v) the "noose" comment by Co-Worker C in September 2015; (vi) the altercation with Akin-Ajayi and criminal complaint against plaintiff in April 2016; and (vii) plaintiff's termination in September 2016.

To begin with, only two of the seven alleged incidents are based on a protected characteristic – namely the incidents with Co-Worker B and Co-Worker C. There are no plausible allegations that the other five incidents were based on plaintiff's race or color. First, the stand-your-ground law discussion was one that plaintiff instigated on a break (it is unclear whether this discussion took place in a break or lunch room). *See* FAC ¶ 24. Co-Worker A overheard the discussion about the Trayvon Martin case and Florida's stand-your-ground law and expressed an opinion that was different from plaintiff's opinion, namely that the Trayvon Martin case was about the rule of law. *Id.* ¶ 25. Plaintiff then conclusorily asserts that the conversation turned into a "confrontation on the basis of race," but does not explain this statement or allege that the conversation went beyond a discussion of the Trayvon Martin case. *Id.* In the context of that conversation, Co-Worker A is then alleged to have said that he, Co-Worker A, had a right to stand his ground against plaintiff. *Id.* This appears to have been a heated political discussion about the import of the Trayvon Martin case about which plaintiff and Co-Worker A had a difference of opinion, not an instance of harassment based on a protected characteristic.[8]

Second, plaintiff alleges that Hayes stated that plaintiff was "not leadership material."

---

[8] *See, e.g., Davis v. Aegis Films, Inc.*, No. 14-cv-1305, 2015 WL 12591011 (N.D. Ga. Aug. 6, 2015) (finding no hostile work environment, where part of claim based on discussion of Trayvon Martin trial); *Mingo v. Magic Hat Consulting*, No. 14-cv-5433, 2015 WL 4578912 (E.D. Pa. July 30, 2015) (finding no hostile work environment, where part of claim based on discussion of Trayvon Martin trial).

FAC ¶ 32.  Although plaintiff alleges that he perceived this as being race- or color-based, there are no supporting allegations demonstrating that plaintiff's perception was reasonable, why plaintiff perceived the comment this way, or that the allegation that the statement was based on race or color is plausible.  Indeed, courts have recognized that similar comments, absent a specific connection to a plaintiff's protected characteristic, do not establish harassment sufficient to establish a plausible hostile work environment claim.[9]

Third, plaintiff relies on a conversation between plaintiff and Williams in which Williams instructed plaintiff _not_ to file an EEO complaint because it would be perceived as "whining." FAC ¶¶ 33-36.[10]  Again, plaintiff fails to allege that Williams, who is Black and African American, had any race- or color-based animus against plaintiff.  Moreover, the comment has no connection to plaintiff's race or color.  *See, e.g., Fry v. Prince George's Cnty., Md.*, No. 05-cv-3150, 2008 WL 9360013, at *7 (D. Md. Mar. 14, 2008) ("While Cowan may have been displeased or upset about Jackson's comments, absent some harassment on the basis of race towards her, this is not enough to establish a hostile work environment based on race.").

Fourth, plaintiff relies on the incident with Akin-Ajayi and unspecified TSA management's actions to support Akin-Ajayi's criminal complaint.  *See* FAC ¶¶ 41-63.  Akin-Ajayi is also a Black and African American man.  *Id.* ¶ 41.  Plaintiff asserts that unidentified "TSA management" provided Akin-Ajayi with plaintiff's personal information.  *Id.* ¶ 53.

---

[9] *See, e.g., Combs-Burge v. Rumsfeld*, 170 F. App'x 856, 862 (4th 2006) (holding that managements criticisms and nit-picking of plaintiff did not support a hostile work environment claim); *Johnson v. Quin Rivers Agency for Community Action, Inc.*, 140 F. Supp. 2d 657, 667 (E.D. Va. 2001) (holding that comments reflecting that employee viewed plaintiff as a poor worker was insufficient to support a claim for a hostile work environment); *Hernandez v. Dep't of Treasury*, No. 02-cv-3164, 2003 WL 22715648, at *6 (E.D. La. Nov. 13, 2003) (holding that comment that plaintiff "didn't have communications or leadership skills" was not a "slur" and did not support a hostile work environment claim).

[10] In his opposition brief, plaintiff concedes that this comment was not alleged during the administrative process and cannot be brought as a claim.  *See* Opp'n at 12.

Plaintiff again fails to connect any portion of the dispute with Akin-Ajayi or the actions of "TSA management" to any animus on the basis of race or color. Indeed, plaintiff's allegations would seem to dispute that premise, because "TSA management" allegedly went to great lengths to assist a Black and African American man, Akin-Ajayi. In plaintiff's view, TSA management chose the wrong Black and African American man to support; but this does not plausibly allege race- or color-based harassment on the part of TSA management. Thus, the incident involving Akin-Ajayi also fails to support a claim of race- or color-based harassment.

Finally, plaintiff alleges that he was terminated based on his race or color. As discussed, *supra*, there are no allegations in the FAC that connect plaintiff's discharge to his race or color. Williams, the supervisor who recommended plaintiff's discharge, is Black and African American and plaintiff does not allege that he has any race- or color-based animus. Nor does plaintiff allege that Williams or Chin, the ultimate decision-maker, had ever made any race- or color-based comments or acted in a manner that suggested any animus based on race or color. The mere fact that Williams and Chin believed that the incident with Akin-Ajayi was plaintiff's fault, in plaintiff's view incorrectly, does not demonstrate race- or color-based animus in and of itself. This is particularly true where Akin-Ajayi is also Black and African American. Accordingly, plaintiff's termination does not support his hostile work environment claim. *See, e.g., Holland v. Compass Grp., USA, Inc.*, No. 3:14-cv-62, 2015 WL 4208623, at *1 (W.D.N.C. July 10, 2015) ("Because it appears from the Complaint that this incident did not implicate Plaintiff's race or any other protected status, Plaintiff failed to allege facts that support a claim for hostile work environment based on race.").

Two incidents described in plaintiff's complaint do implicate plaintiff's race or color, namely the interactions with Co-Worker B and Co-Worker C. The question thus becomes

15

whether those incidents satisfy the severe or pervasive standard for a hostile work environment claim and are imputable to the employer, defendant, so as to state a plausible claim for relief. They do not. The more serious incident involves statements by Co-Worker C, outside of plaintiff's presence, that Co-Worker C would like to "hang" plaintiff "by a noose" and "drag" plaintiff from his car. FAC ¶ 37. This statement was made while plaintiff was out of the office in September 2015, it was reported to unidentified supervisors, and plaintiff does not allege that he had any other race- or color-based interactions with Co-Worker C again. For purposes of the motion to dismiss, the government concedes that this interaction is severe, but this position is doubtful. *See Vessells v. Kaydon Ring & Seal*, No. 17-cv-1516, 2018 WL 3122454 at *12 (D. Md. June 26, 2018) (finding no hostile work environment where plaintiff alleged hose was tied as a noose to harass plaintiff and where a note referred to monkeys).[11] The interaction with Co-Worker B, which occurred in February 2014, involved Co-Worker B stating "white people have to teach African-Americans to do everything in this country" and posting a picture of plaintiff online with the words "F**k the Police." FAC ¶¶ 28-30.[12] Again, this statement appears to have been a one-off interaction with Co-Worker B that was never repeated after it was reported to supervisors. Even taken together, these incidents constitute "isolated or scattered incidents occurring over the course of several months" which is not "pervasive enough to state a claim for

---

[11] *See, e.g., Skinner v. Giant Foods, Inc.*, 68 F. App'x 393, 399 (4th Cir. 2003) (affirming grant of summary judgment in favor of employer where: (i) a manager used a racial slur against the plaintiff; (ii) white workers used the same slur 13 times; and (iii) racist graffiti at the work site); *Barrow v. Georgia Pacific Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (finding the following allegations insufficiently severe or pervasive: (i) displays of confederate flags, (ii) the letters KKK on a bathroom wall; (iii) use of the n-word three times; (iv) a noose was in an employee's locker, and (v) plaintiff told a superintendent would kick his "black ass" if he looked at "that white girl"); *Parks v. Louisiana-Pacific Corp.*, 400 F. Supp. 3d 393 (W.D.N.C. 2019) (granting summary judgment to the employer where two co-workers used racial slurs against plaintiff, a sign with the n-word was placed on plaintiff's locker, and the phrase KKK was scratched on a bathroom stall).

[12] It is not clear whether this photo was posted while Co-Worker B was at work or in his free time.

hostile work environment." *Mustafa*, 313 F. Supp. 3d at 695 & n. 14 (citing cases).[13]  There is

more than a year between these two incidents, which each are alleged to be one-off incidents

with co-workers.

Moreover, even assuming that the incident with Co-Worker C constitutes severe

harassment (which is in doubt), plaintiff has not alleged facts sufficient to impute such conduct

to defendant.  As the Fourth Circuit has recently held, to impute a co-worker's harassment to the

employer requires a plaintiff to allege facts demonstrating that the employer "knew, or should

have known, about the harassment and failed to take action reasonably calculated to stop it."

*Bazemore v. Best Buy*, 957 F.3d 195, 201 (4th Cir. 2020).  In affirming the dismissal of the

plaintiff's hostile work environment claim in *Bazemore*, the Fourth Circuit emphasized that the

harassing co-worker did not harass the plaintiff again, nor did anyone else at the defendant

company.  *Id.*  Indeed, the Fourth Circuit has long recognized that the "cessation of harassment

shows effectiveness."  *EEOC v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011) (internal

citations omitted).  Here, plaintiff does not allege that Co-Worker C ever harassed him again

after plaintiff reported the harassment to the unnamed supervisors nor has plaintiff's alleged facts

demonstrating that anyone else harassed him on the basis of his race or color after the interaction

with Co-Worker C, because, as discussed *supra*, the other incidents of which plaintiff complains

have no connection to plaintiff's race or color.

In sum, plaintiff has failed to state a plausible claim for a hostile work environment

because: (i) most of the incidents upon which he relies have nothing to do with plaintiff's

protected characteristics; and (ii) the two incidents which do relate to plaintiff's protected

---

[13] *See also Hartsell v. Duplex Prod. Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (holding that comments such as "fetch your husband's slippers like a good little wife" and references to employees as "slaves" and "little people" were not sufficient to sustain a hostile work environment claim).

characteristics are either not severe or pervasive or not imputable to defendant.  Accordingly, for this additional reason, plaintiff's hostile work environment claim must be dismissed.[14]

## IV.

Plaintiff's final cause of action in the FAC is for retaliation.  Defendant argues that there is a lack of causation between plaintiff's protected EEO activity and plaintiff's termination such that plaintiff cannot state a plausible claim for relief.  Defendant is incorrect.  Because the process of terminating plaintiff began with plaintiff's suspension without pay, plaintiff has plausibly alleged that his termination was in retaliation for his protected EEO activity.

To state a claim for retaliation, a plaintiff must allege facts demonstrating that "retaliation was the real reason for the challenged conduct." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015).  Here, plaintiff engaged in protected activity on April 25, 2016, when he consulted with an EEO counselor, and three days later he was suspended without pay as part of an investigation that ultimately led to his termination five months after his initial EEO conduct.  Moreover, in the interim, plaintiff filed his official EEO complaint – in August 2016 – just one month before his termination occurred.  This is sufficient to allege that retaliation was the reason for the challenged conduct.  Although courts generally focus on temporal proximity, that focus shifts where there is ongoing retaliatory activity. *See Hart v. Hanover Cty. Sch. Bd.*, No. 3:10-cv-794, 2013 WL 1867388, at *5 (E.D. Va. May 2, 2013) ("Most frequently, courts look to ongoing retaliatory animus or intervening antagonism during the period between the protected activity and the adverse action in order to find a causal connection where there is a lack of temporal proximity.").  But, here, it is unnecessary to look beyond the temporal proximity for

---

[14] Because the hostile work environment claim not only fails to state a claim but is untimely, amendment would be futile. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming a district court's dismissal when amendment would be futile).

causation because plaintiff engaged in a *second* protected activity just one month before he was terminated, namely his August 2016 EEO complaint – a fact which defendant ignores. Moreover, plaintiff specifically alleges that the decision-makers with respect to his discharge – Williams and Chin – knew of plaintiff's EEO activity and that Williams had specifically warned plaintiff not to engage in such activity. Thus, defendant's motion to dismiss the retaliation claim must be denied.[15]

## V.

For the reasons set forth above, defendant's motion to dismiss will be granted in part and denied in part. Specifically, the motion must be granted with respect to: (i) plaintiff's claim of race discrimination (Count 1); and (ii) plaintiff's claim of color discrimination (Count 2). Defendant's motion must be denied with respect to plaintiff's retaliation claim (Count 3), which will move forward to discovery.

An appropriate order will issue separately.

The Clerk of Court is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
December 10, 2020

/s/
T. S. Ellis, III
United States District Judge

---

[15] Defendant also addresses other points at which plaintiff complained to his supervisors about what he perceived to be race- or color-based conduct and argues that plaintiff cannot rest his retaliation claims on that conduct. The FAC does not attempt to base plaintiff's retaliation claim on any adverse action other than those related to his discharge. To the extent plaintiff does attempt to rely on those prior complaints to supervisors, defendant is correct that those claims must fail because those incidents did not result in adverse employment actions.

19