IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHANE HECTOR, <br>       Plaintiff, | ) <br> ) <br> ) |
| v. | )    Civil No. 1:19-cv-1481 <br> ) |
| ALEJANDRO MAYORKAS, Secretary, <br> U.S. Department of Homeland Security, <br>       Defendant. | ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Shane Hector, a Transportation Security Officer ("TSO") at Washington Dulles International Airport ("Dulles"), was terminated from his position after an incident in which he forcefully shoved another TSO in front of the security line at Dulles. Thereafter, plaintiff filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") asserting that his termination was the result of: (i) race discrimination; (ii) color discrimination; and (iii) retaliation. At the threshold stage, pursuant to Rule 12(b)(6), Fed. R. Civ. P., plaintiff's claims of race and color discrimination were dismissed. *See* Memorandum Opinion and Order, dated December 10, 2020 (Dkts. 30, 31). Plaintiff's sole remaining claim is his allegation of retaliation, in which plaintiff claims that he was terminated for engaging in protected activity.

At issue now is defendant's motion for summary judgment, in which defendant argues that summary judgment should issue because plaintiff the undisputed factual record does not show a causal connection between plaintiff's protected activity and his termination and because the undisputed factual record demonstrates that defendant had a legitimate, non-discriminatory reason for plaintiff's termination. Plaintiff opposes the motion, arguing that defendant's proffered explanation is prextual because defendant did not discharge a similarly situated employees. Thus, the principal issue presented by the motion for summary judgment is plaintiff

1

has established a genuine issue of material fact as to whether defendant's explanation for plaintiff's termination is pretextual.

The motion has been fully briefed and oral argument was held on Friday, February 18, 2022. The matter is thus ripe for disposition. For the reasons stated below, defendant's motion must be granted, and judgment entered in favor of defendant.

I.

Summary judgment is appropriate only where there are no genuine disputes of material fact. *See* Rule 56, Fed. R. Civ. P. To this end, defendant, pursuant to Rule 56 and Local Rule 56, set forth a statement of material facts in separate enumerated paragraphs that defendant contends are undisputed. Next, plaintiff, as required by Rule 56 and Local Rule 56, responded to defendant's enumerated statement of material facts by admitting or disputing those facts and supporting any alleged disputes of fact with admissible evidence.[1]

Accordingly, the following statement of facts is derived from a careful review of defendant's statement of undisputed facts, plaintiff's response, and the record as a whole.

1. The Transportation Security Administration ("TSA") is responsible for security and passenger screening operations at airports. TSA is a component of the Department of Homeland Security ("DHS").

2. At Dulles, TSA's screening operations are overseen by the Assistant Federal Security Director for Screening ("AFSD-Screening"). Since 2013, Eric Chin has been the AFSD-Screening at Dulles.

3. Chin supervises approximately 700 TSA employees. As the ASFD-Screening, Chin was the ultimate supervisor – four levels above – both plaintiff and TSO Julius Akin-Ajayi, who were TSOs with similar duties and responsibilities.

4. A TSO screens passengers before they board flights, which involves verifying tickets,

---

[1] Plaintiff also set forth a set of "Additional Disputed Facts." Neither the Federal Rules nor the Local Rules invite, permit, or forbid plaintiff, or any nonmovant, from setting forth the nonmovant's enumeration of disputed facts. In any event, defendant responded to plaintiff's additional proposed facts and each of plaintiff's proposed facts has been taken into account in the analysis.

    identification, and screening personal items and checked baggage for contraband.

5. TSA hired plaintiff as a TSO at Dulles in 2012.

6. As a TSO, plaintiff was bound by TSA Management Directive 1100.73-5 (the "Code of Conduct"), which strictly prohibits workplace violence, including threatening or confrontational behavior.

7. The Code of Conduct also requires employees to "cooperate fully with all TSA and DHS investigations and inquiries," including those by TSA's Office of Inspection ("OOI").

8. TSA's handbook to Management Directive 1100.75-3 ("Handbook"), explains TSA's disciplinary process as follows:

    a. Before taking any adverse or disciplinary action, TSA managers must engage in a pre-decisional process that includes: (i) assessing the incident; (ii) engaging in fact-finding necessary to make a decision; (iii) reviewing all relevant evidence to ensure that the action meets a preponderance of the evidence or substantial evidence standard of proof, as appropriate.

    b. For certain forms of discipline, including indefinite suspensions or removals due to certain infractions, managers may engage in a one-step process that involves meeting with the employee to discuss the incident, advising the employee of the potential consequences, and providing the employee the opportunity to respond orally or in writing.

    c. In a two-step process, managers are not required to meet with the employee before proposing discipline. This process, however, requires the issuance of a written notice of proposed action and notice of decision, and applies to adverse actions such as removal.

    d. After engaging in either the one-step or the two-step process, the manager determines the appropriate discipline.

9. The Handbook describes the factors to consider before imposing discipline, the mechanics of such a decision, the due process owed to an employee, and the delegation of authority to impose certain kinds of discipline.

10. TSA's Table of Offenses and Penalties provides guidance in determining the appropriate penalty for an infraction

11. The incident underlying this case was captured on video from three different surveillance cameras. *See* Def. Exh. 7 (incident captured at time stamp 0:11-12); Def. Exh. 8 (incident captured at time stamp 1:46); Def. Exh. 9 (incident captured at time stamp

3

1:45).[2]

12. On April 21, 2016, at approximately 3:00 p.m., plaintiff was clearing passengers from the advancing imaging technology ("AIT") at checkpoint lanes 11-12 at Dulles.

13. Plaintiff was standing near the stanchions roping off the area where passengers would exit after passing through the AIT.

14. Fellow TSO Akin-Ajayi approached plaintiff and attempted to move past plaintiff.

15. Plaintiff would not let Akin-Ajayi pass.

16. Plaintiff admits that he then shoved Akin-Ajayi "to get [Akin-Ajayi] out of [plaintiff's] space."[3]

17. After plaintiff shoved Akin-Ajayi, plaintiff called for a supervisor.

18. As a result of the April 21, 2016 incident, plaintiff and Akin-Ajayi were charged with misdemeanor assault and battery in Loudoun County. The Commonwealth's Attorney for Loudoun County later dismissed the charges against both plaintiff and Akin-Ajayi.

19. On April 25, 2016, plaintiff contacted an EEO official for the first time and lodged an informal complaint of discrimination.

20. On April 28, 2016, Jack Irving, TSA's Acting Assistant Federal Security Director for Screening, issued plaintiff a notice of indefinite suspension due to: (i) his arrest on the misdemeanor assault and battery charge; and (ii) a pending internal investigation into the April 21, 2016 workplace violence incident which if true, represented a threat to life, property, safety or the effective operation of the workplace.

    a. Irving later had a second pre-decisional conversation with plaintiff in September 2016 in order to revise the grounds for the indefinite suspension to match the grounds for the proposed removal. Plaintiff responded to that second conversation in writing.

21. Irving's letter advised plaintiff of plaintiff's right to request reconsideration of the

---

[2] As the Fourth Circuit has recognized, "where ... the record contains an unchallenged videotape capturing the events in question," a court need "only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (at the summary judgment stage). Thus, where plaintiff's version of events conflicts with the videos, the video record establishes the undisputed facts.

[3] Plaintiff concedes, as he must, that he shoved Akin-Ajayi. All three videos of the incident clearly depict Akin-Ajayi attempt to move past plaintiff and then plaintiff forcefully extending his arm to shove Akin-Ajayi, who stumbled as a result. Although plaintiff admits that he shoved Akin-Ajayi, as the videos clearly confirm, plaintiff attempts to create a dispute of fact as to who was the aggressor in the incident. That argument is addressed fully *infra*. There can be no dispute, however, that the videos demonstrate plaintiff shoving Akin-Ajayi and do not demonstrate Akin-Ajayi engaging in similar violent conduct.

4

decision and of plaintiff's right to appeal.

22. Plaintiff requested reconsideration of the indefinite suspension imposed on him. That request was denied by TSA's Deputy Federal Security Director, Eric Beane.

23. Plaintiff then appealed his indefinite suspension to the Office of Professional Responsibility Appellate Board (the "Board"). The Board denied plaintiff's appeal.

24. An internal investigation into the April 21, 2016 incident was opened by OOI. After the Commonwealth's Attorney dismissed charges against plaintiff and Akin-Ajayi, OOI requested a meeting with plaintiff to determine the sequence of events on April 21, 2016.

25. Both plaintiff and Akin-Ajayi were the subject of the OOI investigation.

26. Akin-Ajayi was not subject to discipline or termination as a result of the April 21, 2016 or the OOI investigation and had no prior EEO activity from 2013-2016.

27. In the course of plaintiff's meeting with OOI agents, the OOI agents requested that plaintiff provide a written statement of plaintiff's version of events, which plaintiff refused to provide. *See* Def. Exh. 20 at TSA-1784-85.[4]

28. On August 9, 2016, plaintiff filed his formal administrative complaint of discrimination and retaliation. Consistent with federal regulations, TSA then investigated plaintiff's claims and compiled a Report of Investigation. Plaintiff subsequently amended his EEO complaint to include allegations regarding his termination.

29. On August 15, 2016, TSA's Deputy Assistant Federal Security Director for Screening at Dulles, Lester Williams, had a pre-decisional discussion with Plaintiff. During that discussion, Williams gave plaintiff notice of the allegations against him, including the allegation of workplace violence, supported by video of plaintiff shoving Akin-Ajayi in front of the traveling public, and its possible consequences, up to and including removal.[5]

30. Plaintiff later responded in writing, where plaintiff again stated that he "responded to TSO Akin-Ajayi's physical contact only to ward off further attack by TSO Akin-Ajayi."

31. On August 26, 2016, plaintiff received TSA's Final Agency Decision concluding that

---

[4] Plaintiff does not dispute that he refused to provide a written statement to OOI. Instead, plaintiff attempts to provide further explanation for his refusal. In an affidavit provided as part of the EEO process, plaintiff explained that he gave OOI "an oral statement and I had previously provided written statements, so I thought that was sufficient." Def. Exh. 3 at TSA 1139. Plaintiff asserts, in his opposition brief, that his deposition also "elaborates and provides more detail to the affidavit," but does not dispute that plaintiff refused to provide another written statement. Pl. Opp'n at 5. Accordingly, there is no genuine dispute of material fact.

[5] Plaintiff does not dispute that Williams gave plaintiff notice of the allegations and evidence against him. Rather, plaintiff only attempts to dispute the significance of the evidence that Williams referenced in the Notice. Because plaintiff does not dispute the asserted fact that Williams gave plaintiff the notice described, there is no genuine dispute of material fact.

5

plaintiff was not the victim of unlawful discrimination or retaliation.

32. On September 13, 2016, Williams sent plaintiff a notice of proposed removal from TSA. Four charges supported the notice: (i) workplace violence, stemming from the April 21, 2016 incident with Akin-Ajayi; (ii) unauthorized recording; (iii) failure to cooperate in an agency investigation; and (iv) inappropriate comments.

33. Williams' notice of proposed removal made clear that the four charges "taken separately, or jointly together, each independently supports the proposed penalty of removal." Williams also advised plaintiff that plaintiff had an opportunity to respond to the charges in writing or orally within seven days.

34. Plaintiff responded to the charges in writing, asserting that he "defended [himself] against another attack" from Akin-Ajayi on April 21, 2016 and denying the remaining charges.

35. On September 22, 2016, Chin – the sole decision-maker – issued a decision on plaintiff's proposed removal and removed plaintiff from his position as a TSO effective the following day. Chin did not consult with other managers in plaintiff's supervisory chain in reaching his decision.[6]

36. Chin's removal decision was based on four separate charges: (i) workplace violence; (ii) unauthorized recording; (iii) failure to cooperate in an agency investigation; and (iv) inappropriate comments. The removal decision also as stated by Chin also reflected that the four charges "taken separately, or jointly together, each independently supports the proposed penalty of removal."[7]

37. Prior to this incident, Chin had never used charges of unauthorized recording or failure to cooperate with an agency investigation to support the removal or separation of any other federal employee.

38. As documented in Chin's removal decision, Chin considered a host of evidence before removing plaintiff from TSA. The video depicting plaintiff shoving Akin-Ajayi was of particular importance with respect to Chin's decision-making process and that "[t]he video is very clear that [plaintiff] shoved Mr. Ajayi." Chin reflected that "violence in the workplace is a very serious charge as substantiated by that video."[8]

39. Additionally, Chin was aware that plaintiff had failed to provide a statement to OOI as

---

[6] Plaintiff's response to the facts asserted regarding Chin's decision is confusing. Plaintiff disputes the asserted fact by arguing that Chin failed to consult with "other Plaintiff's attorneys," but the asserted fact makes no reference to attorneys. *See* Opp'n at 5. Accordingly, there is no genuine dispute of material fact as to the asserted fact.

[7] Plaintiff does not attempt to dispute that Chin reports that these four grounds formed the basis for Chin's decision. Rather, plaintiff argues Chin did not reach the correct result. Again, because the is not the undisputed fact asserted by defendant, there is no genuine dispute of material fact.

[8] Plaintiff argues that Chin did not review all three videos of the incident. But defendant does not assert that Chin viewed all three videos, rather, defendant asserts that Chin reviewed a "host" of evidence. Because plaintiff does not dispute the asserted fact that Chin reviewed a "host" of evidence, there is no genuine dispute of material fact.

required, which itself is a removable offense. Chin was aware that plaintiff had made other statements regarding the incident.

40. Chin considered plaintiff's length of employment with TSA and satisfactory performance as "somewhat mitigating" factors, but ultimately did not feel that those factors outweighed the nature and seriousness of the charge and did not consider any other mitigating factors.

41. In determining the appropriate penalty, Chin consulted TSA's Table of Penalties. The Table of Penalties recommends a range of punishment from a five-day suspension to removal.

42. Chin determined that removal was the appropriate penalty "based on the video" that he reviewed of plaintiff pushing Akin-Ajayi. Chin's decision did not depend on whether plaintiff had any criminal charges then pending against plaintiff or whether plaintiff had been convicted of any crimes relating to the event.

43. Chin was not aware of Plaintiff's specific EEO activity at the time he decided to remove plaintiff from TSA, but Chin was aware that plaintiff had provided statements to the EEOC Civil Rights Division and Chin was aware that employees facing discipline generally file EEO complaints.

44. Chin regularly learned about events, such as notices of indefinite suspension and OOI investigations, by word of mouth.

## II.

The standard for summary judgment is too well-settled to require extensive elaboration here. Summary judgment is appropriate when there is "no genuine dispute as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). To serve as a bar to summary judgment, disputed of fact must be "material," which means that they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Also, important at summary judgment, is that, where a video recording exists, the Fourth Circuit has recognized a court need "only credit the plaintiff's version of the facts to the extent it is not

contradicted by the videotape." *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

### III.

To avoid summary judgment on his Title VII retaliation claim plaintiff may produce either direct evidence of retaliation or rely instead on the *McDonnell-Douglas*[9] burden shifting framework. Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x. 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*)). Here, plaintiff has not produced direct evidence of retaliation and does not claim that he has such evidence. Accordingly, it is necessary to analyze plaintiff's claims of retaliation under *McDonnell-Douglas*' burden-shifting framework.

Assuming, *arguendo*, that plaintiff can establish a *prima facie* case of retaliation,[10] defendant has produced a legitimate non-discriminatory reason for removing plaintiff. Defendant asserts that plaintiff was removed, *inter alia*, for engaging in workplace violence. Thus, the focus of the parties' arguments is whether defendant's asserted reason is pretextual. It is not.

Plaintiff's argument on pretext focuses on his claim that Akin-Ajayi is a valid comparator, as plaintiff claims that Akin-Ajayi was a similarly situated employee who did not

---

[9] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (establishing a framework for discrimination cases whereby: (1) the plaintiff establishes a *prima facie* case, then (2) the defendant must offer a legitimate, nondiscriminatory reason for the action taken, and then (3) the plaintiff must show that the offered explanation is pretextual).

[10] To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove three elements: (1) that he engaged in protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). Here, the parties dispute whether plaintiff can satisfy the third element of the *prima facie* case.

engage in protected activity and who was not terminated for the April 21, 2016 incident. Plaintiff's argument fails; Akin-Ajayi is not a valid comparator as he did not "engage[] in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Dawson v. Wash. Gas Light Co.*, 2021 WL 2935326, at *6 (4th Cir. July 13, 2021). The undisputed factual record discloses that plaintiff "shoved" Akin-Ajayi and that Akin-Ajayi did not shove plaintiff or engage in the same workplace violence. *See* Def. Exh. 2, Tr. 75:23-25 ("Pl. Depo. Tr."); Def. Exhs. 7, 8, 9 (collectively, the "videos").[11] Moreover, the undisputed record at summary judgment establishes that workplace violence, such as shoving, is a basis for removal pursuant to TSA's Code of Conduct and Table of Penalties. *See* Def. Exh. 4 ("Code of Conduct"); Def. Exh. 5 ("Table of Penalties"). The video evidence on this summary judgment record demonstrates that *plaintiff* was the only person to extend his arm out and to push Akin-Ajayi with enough force to cause Akin-Ajayi to stumble. Thus, there are sound differences between plaintiff's conduct and Akin-Ajayi's conduct on April 21, 2016 establishing a legitimate non-discriminatory basis for defendant to treat plaintiff differently from Akin-Ajayi.

Especially instructive on this point is the Fourth Circuit's decision in *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202 (4th Cir. 2014). There, the Fourth Circuit affirmed the grant of summary judgment in favor of an employer on a retaliation claim where the plaintiff was discharged after putting her hands on another employee during an altercation. *Id.* In *Walker*, as here, the plaintiff argued that there was evidence of pretext based on the employer's failure to

---

[11] Based on the video evidence, the OOI investigation determined that Akin-Ajayi was not the aggressor in the incident. *See* Pl. Exh. 5 at TSA-609. Even if defendant were somehow mistaken as to whether Akin-Ajayi pushed plaintiff (which the videos do not support), that alone is not sufficient to establish pretext absent some connection to plaintiff's protected activity. *See Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017) ("If [plaintiff] was fired for misconduct she did not actually engage in, that is unfortunate, but a good-faith factual mistake is not the stuff of which Title VII violations are made.").

9

terminate a similarly situated co-worker involved in the incident. In *Walker*, the Fourth Circuit recognized that the *employer* "did not view Walker and Mullins as 'similarly situated,' nor is there evidence that their roles in the altercation were equal." *Id.* at 212. Here, plaintiff's and Akin-Ajayi's roles in the April 21, 2016 incident were not equal and Chin did not view their roles as equal based on the video evidence. The surveillance videos show that *plaintiff* was the only person to extend his arm and forcefully shove another employee. On similar facts in *Walker*, the Fourth Circuit agreed that "[t]he undisputed record shows that [defendant] decided Walker should be fired as a result of Walker's physical assault on a co-worker." *Id.* Thus, applying the holdings of *Walker* to this case, plaintiff has failed to establish pretext as the undisputed facts show that Chin decided that plaintiff should be terminated "based on the video." Def. Exh. 1, Chin Depo. Tr. at 110:14-16.

Chin and the OOI investigation also determined that Akin-Ajayi was not the aggressor in the April 21, 2016 incident based on a review of the incident. Plaintiff disagrees, relying on "witness" statements that plaintiff shouted "don't push me" during the incident. This argument is unpersuasive, because those witnesses, as the record reflects, did not see the April 21, 2016 incident and are only reporting what they heard. *See* Pl. Exh. 5, OOI Investigation at TSA 629, 632, 636, 642; Def. Exh. 20 at TSA 1772, 1773, 1776, 1777, and 1778.[12] The best "eyewitnesses" to the April 21, 2016 incident are three videos which show only plaintiff act violently. Moreover, the witnesses, who did not observe plaintiff's interaction with Akin-Ajayi, cannot know whether plaintiff's comments were meant to be literal or figurative. In *Walker*, the

---

[12] Moreover, these statements by witnesses who did not observe the incident are clearly hearsay, as plaintiff offers these statements for the truth of the matter asserted, and plaintiff has identified no relevant hearsay exception. As the Fourth Circuit has recognized, "hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis" to create a factual dispute "at summary judgment." *Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019). Additionally, the videos contradict any assertion that Akin-Ajayi pushed plaintiff. *See Iko*, 535 F.3d at 230 (a court need "only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape").

Fourth Circuit recognized that similar complaints about the adequacy of an employer's investigation do not "provide[] evidence of pretext." 775 F.3d at 211. Accordingly, defendant's common-sense decision not to rely on statements from persons who did not see the April 21, 2016 incident does not establish pretext, especially considering the video evidence on which defendant relied.

Plaintiff also argues that he has established genuine issues of fact with respect to pretext because Chin, the decision-maker, learned of plaintiff's EEO activity before reaching his decision to remove plaintiff. This argument also failed because the Fourth Circuit sensibly has recognized that "proof that [plaintiff] complained about [discrimination] as part of the investigation is insufficient to suggest pretext." *Walker*, 775 F.3d at 211; *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989) ("[M]ere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee."). The undisputed factual record demonstrates that plaintiff made an informal EEO complaint on April 25, 2016 *after* the April 21, 2016 incident. Although Chin was generally aware that plaintiff had made statements to the EEO and had presumed that plaintiff made a complaint, Chin was unaware of the specifics of plaintiff's complaint. Chin's general knowledge of plaintiff's EEO activity alone is insufficient to establish pretext, where Chin relied on video evidence showing plaintiff forcefully shoving Akin-Ajayi.[13] Plaintiff failed to show that Chin's knowledge infected the decision-making process or otherwise demonstrated that the legitimate,

---

[13] Plaintiff makes much of the fact that Chin reviewed only two of the three surveillance videos of the April 21, 2016 incident and argues that the failure to review all three videos reveals a discriminatory intent. Plaintiff, however, does not explain this argument or why the failure to review all three videos is important. Indeed, there are no material differences between what the three videos show. Although each video shows a different angle of the incident, each video records plaintiff shoving Akin-Ajayi and no video shows Akin-Ajayi shoving plaintiff.

11

non-discriminatory reason for plaintiff's discharge is unworthy of credence. Accordingly, plaintiff has not created a genuine issue of material fact as to whether defendant's explanation is pretextual.

Finally, plaintiff does not dispute the evidentiary basis for the *other* three charges in the Notice of Removal upon which defendant relies to support plaintiff's removal. Plaintiff makes two arguments with respect to these other charges: (i) that plaintiff had made statements to OOI, so the fact that plaintiff failed to make another statement to OOI should not matter; and (ii) Chin had never relied on unauthorized recording or failure to cooperate to terminate an employee before. Neither argument establishes pretext. Plaintiff cannot point to any record evidence that Chin had failed to discipline any employee for failing to cooperate with an investigation or for engaging in unauthorized recording where such a charge was appropriate. Thus, no inference of pretext is warranted. Additionally, plaintiff admits that he refused to provide OOI with a written statement because he "had previously provided written statements, so [he] thought that was sufficient." Def. Exh. 3 at TSA 1139. Yet, plaintiff does not point to any portion of the Handbook or Code of Conduct that permits plaintiff to refuse OOI in these circumstances. In short, the record evidence does not suggest that the addition of these three charges was unwarranted or evidence of pretext.

In sum, it is undisputed that plaintiff forcefully shoved Akin-Ajayi and that this act of workplace violence violated the Code of Conduct and was sufficient to result in dismissal. It is further undisputed that all three videos do not show Akin-Ajayi forcefully pushing plaintiff or acting violent towards plaintiff. Defendant thus had a legitimate, non-discriminatory reason to treat Akin-Ajayi and plaintiff differently. As the Fourth Circuit has held "[i]t is not [a court's] province to decide whether [an employer's] reason [for terminating an employee] was wise, fair,

or even correct, ultimately, so long as it truly was the reason for [the employee's] termination." *DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir.1998). Simply put, on this summary judgment record, plaintiff has failed to demonstrate that defendant's explanation for its decision was "unworthy of credence" or was "a cover-up for unlawful [retaliation]." *Walker,* 775 F.3d at 211 (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)). Accordingly, defendant's motion must be granted, and summary judgment entered.

An appropriate Order will issue.

The Clerk of Court is directed to provide a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
March 2, 2021

/s/
———————————
T. S. Ellis, III
United States District Judge

13